Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor changes, the Full Commission makes the following FINDINGS OF FACT:
FINDINGS OF FACT
1. The plaintiff is a thirty-eight-year-old married female with a tenth grade education. Her employment history includes working at a tobacco warehouse, working in a stock room at Sears, Roebuck and Company and working as a maid at a motel. She worked for the defendant employer for about three years. Prior to and on the day of the December 21, 1988, accident, the plaintiff worked in the defendant employer's dye house operating the dye range. This job required the plaintiff to stand and walk most of the time; she was able to sit for only two to three minutes at a time.
2. Following the accident the plaintiff was under the care of doctors in her area for a hairline fracture of the second metatarsal on her left foot. She was later referred to Dr. R. T. Wyker, an orthopedic surgeon, who began to treat her with conservative measures beginning on June 29, 1989. On January 18, 1990, Dr. Wyker performed an excision of the Morton's Neuroma which had developed. This involved surgically removing a portion of the nerve to eliminate the area of pain. Dr. Wyker followed the plaintiff thereafter. On April 18 1990, Dr. Wyker felt the plaintiff was healing since she was not having any pain. When the plaintiff returned on July 5, 1990, Dr. Wyker felt the plaintiff had reached her point of maximum medical improvement and gave her a five percent permanent partial disability rating for the left foot. At that time the plaintiff's range of motion of the ankle and the subtalar joint were good. X-rays were good. The fracture had completely healed. The plaintiff complained of some discomfort and occasional soreness. No swelling was noted. Dr. Wyker used the North Carolina Workers' Compensation Guide in assessing the five percent rating.
3. Pursuant to the opinion and award filed on September 25, 1991 authorizing continuing treatment, the plaintiff saw Dr. Laura Lloyd, a podiatrist, who referred the plaintiff to Dr. J.G. Steel, a neurologist, on October 22, 1991. The plaintiff complained to Dr. Steel of left foot and entire leg numbness and pain with pins and needles sensation on the left leg. There was no anatomic reason why this left foot injury would cause numbness of the entire leg. Strength testing in the left leg revealed a ratchety give away quality indicating the plaintiff was not giving maximum effort. Her gait was somewhat bizarre with her body tilting to the right. She had a limping quality on the left leg. Dr. Steel felt the plaintiff's gait was exaggerated. There was not any anatomic reason for the plaintiff's limping. He ordered MRI studies of the brain and cervical spinal cord to rule out structural abnormalities in the brain or upper spinal cord that might cause left leg weakness and hyperreflexia. Both MRI's were normal. In the opinion of Dr. Steel the plaintiff was either malingering or, at least, exaggerating her injury. Based on a traumatic injury to the left foot Dr. Steel could not explain the plaintiff's present findings.
4. The counsel for the plaintiff referred the plaintiff to Dr. C.D. Miller, a surgeon podiatrist, in Millburn, New Jersey on March 16, 1992. Dr. Miller diagnosed the plaintiff's left foot as painful clinical neuromas of the second and third intermetatarsal spaces. Such diagnosis is very subjective. Dr. Miller felt the plaintiff was 60 to 70 percent disabled from the use of the left foot and limb and 100 percent disabled from doing her job with the defendant employer. It is not known what rating guide, if any, Dr. Miller used in his rating. Under the North Carolina Workers' Compensation Rating Guide a very stiff foot would be rated at 60 percent. The plaintiff did not have a very stiff foot as she had good motion in her foot and ankle.
5. The plaintiff returned to Dr. R.T. Wyker on June 5, 1992 for a follow-up evaluation. At that time the plaintiff complained of discomfort, aches and pains which were fairly diffused. She was six months pregnant which could account for the swelling in her ankles; Dr. Wyker did not see a lot of swelling though. The examination revealed good subtalar and forefoot motion with no real tenderness. There were no signs of neuromas. Dr. Wyker did not change the 5 percent permanent partial disability rating and did not see any reason for further treatment. Based on the examination and all the objective evidence Dr. Wyker did not see any reason why the plaintiff could not do her regular work which required standing.
6. The plaintiff has had the capacity since September 21, 1990 to earn wages she was receiving at the time of the injury in the defendant employer's employment or in any other employment.
7. The plaintiff sustained a 5 percent permanent partial disability of the left foot as a result of the injury by accident.
8. The plaintiff's treatment by Dr. Laura Lloyd after the initial hearing and the plaintiff's treatment by and through Dr. J.G. Steel including the MRI's were reasonably required to effect a cure or give relief.
9. The examination by Dr. C.D. Miller was not reasonably required to effect a cure or give relief.
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. The plaintiff is not entitled to compensation after September 21, 1990 since she has had the capacity since September 21, 1990 to earn the wages she was receiving at the time of the injury in the defendant employer's employment or in any other employment. N.C.G.S. § 97-2(9).
2. As a result of the injury by accident giving rise hereto the plaintiff has sustained a 5 percent permanent partial disability of the left foot for which she is entitled to compensation at the rate of $190.14 per week for 7.2 weeks. N.C.G.S § 97-31(14).
3. The plaintiff's treatment by Dr. Laura Lloyd after the initial hearing and the plaintiff's treatment by and through Dr. J.G. Steel including the MRI's were reasonably required to affect a cure or give relief. The defendants, therefore, are obligated to pay these expenses. N.C.G.S. § 97-25; I.C. Rule 407 (4).
4. The examination by Dr. C.D. Miller was not reasonably required to affect a cure or give relief. The defendants, therefore, are not obligated to pay this expense. N.C.G.S. § 97-25.
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following
AWARD
1. The plaintiff's claim for temporary total disability compensation or total and permanent disability compensation after September 21, 1990, must under the law, be and it is hereby, DENIED.
2. The plaintiff's claim for the expense incurred with Dr. C.D. Miller must under the law be, and it is hereby, DENIED.
3. Defendants shall pay the plaintiff for 5 percent permanent partial disability of the left foot at the rate of $190.14 per week for 7.2 weeks beginning September 22, 1990. Such compensation having been accrued, it shall be paid to the plaintiff in a lump sum, subject to counsel fee hereinafter allowed.
4. Defendants shall pay the plaintiff's expenses incurred with Dr. Laura Lloyd after the initial hearing and the plaintiff's expenses incurred by and through Dr. J.G. Steel including the MRI's when bills for same shall have been submitted through the defendant carrier to and approved by the North Carolina Industrial Commission.
5. A counsel fee in the amount of 25% of the compensation due is hereby approved for plaintiff's counsel and such amount shall be deducted from the compensation due the plaintiff and paid directly to her attorney.
6. Defendants shall pay the costs.
 S/ ______________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ _______________________ COY M. VANCE COMMISSIONER
S/ _______________________ FORREST H. SHUFORD, II SPECIAL DEPUTY COMMISSIONER
JRW/jss 1/18/94